UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                                                         25CR00114

JACKSON ELLIOT FLEMING,

    Defendant.

## DEFENDANT'S CONSOLIDATED MOTIONS *IN LIMINE*

Now comes Jackson Fleming, by and through his counsel, Bedi & Singer, LLP, and respectfully moves for an order *in limine* regarding the following testimony and evidence. In support of this motion, he submits the following:

## Factual Basis

On September 10, 2025, a gunman shot and killed political activist Charlie Kirk at Utah Valley University in Orem, Utah.[1] The killing was covered by national media and generated widespread discussion on social media platforms throughout that day and the days that followed. Jackson Fleming, a twenty-two-year-old resident of Chesterton, Indiana, and recent college graduate, was at his family home when he learned of the killing. He was deeply upset by the murder of Charlie Kirk.

---

[1]Mark Walker & Anushka Patil, *'A Lot of Blood': Witnesses Describe the Charlie Kirk Shooting,* The New York Times, (Sept. 10, 2025)
https://www.nytimes.com/2025/09/10/us/charlie-kirk-shooting-witnesses-utah.html

1

The following day, September 11, 2025, the government alleges that Mr. Fleming made posts on the anonymous social networking application Jodel. Jodel is a platform designed specifically for anonymous communication, where users post short messages viewable within a geographic community of their choosing. In response to negative comments about Charlie Kirk on the Jodel platform, the government alleges Mr. Fleming wrote "Honestly not that surprised I'll be carrying out the mass execution of my peers in a couple." The government alleges this message was viewable to users located at the U.S. Naval Academy.

Upon receiving the posts, Naval Academy officials initiated a campus lockdown. During the lockdown, a midshipman who had barricaded himself in his dormitory room, believing untrue and inaccurate media reports and internal communication that a gunman was on campus dressed as a police officer, struck a Naval Support Activity security officer with a training rifle when the officer entered his room. The officer's weapon discharged, wounding the midshipman in the right shoulder. That midshipman was transported by medevac helicopter to a hospital. A second lockdown was initiated after a separate midshipman reported a suspicious individual on campus, which was subsequently determined to be a law enforcement officer conducting secondary security sweeps. These cascading events were entirely independent of Mr. Fleming. They were caused by the institutional response to the posts, by inaccurate social media reports, and by the fear those reports generated in a campus population already on edge.

On September 12, 2025, the FBI executed a search warrant on Mr. Fleming's home and person. Law enforcement seized an iPhone from his person and a laptop from his

2

bedroom. The digital devices were transported to the FBI's Chicago Division for full forensic analysis by the Computer Analysis and Recovery Team.

1. **<u>Prohibit any evidence of the U.S. Naval Academy's response to the social media post, including that someone was shot</u>**

The court should bar the U.S. Naval Academy's response to communication because it was not rationally related and ineffective. The U.S. Naval Academy's response to the alleged threats and the events which unfolded on September 11, 2025, should be excluded from trial as they are irrelevant under Fed. R. Evid. 401 and substantially more prejudicial than probative under Fed. R. Evid. 403.

a. **<u>Irrelevant under 401</u>**

First, this reaction and subsequent events are completely irrelevant to the elements of 18 § USC 875(c). The four elements that must be shown for a violation of 18 USC § 875 are:

(1) the defendant knowingly transmitted a communication; and

(2) The communication contained a true threat to [injure] any person; and

(3) the defendant transmitted the communication with the appropriate mens rea

(4) the communication was transmitted in interstate commerce.

None of these elements requires a showing of the impact of the alleged threat. Specifically, the attenuated responses to the alleged threat are completely irrelevant to the four elements the government must show. For a piece of evidence to be relevant under 401, it must have "any tendency to make a fact more or less probable than it would be without the evidence" and that "fact is of consequence in determining the action." Fed. R. Evid. 401. To prove the elements in §875, the government does not have to show

that any alleged intended target read the threat or knew there was a threat against them. *United States v. Khan*, 937 F.3d 1042, 1051 (7th Cir. 2019) ("a true threat does not need to be communicated directly to the intended victim"). It follows that any response by any alleged intended target is not relevant to prove the elements of the charge itself. The response by the Naval Academy and the even more attenuated response of individual midshipmen themselves have no bearing on the elements of this case. The government can charge an individual with a violation of 18 U.S.C. § 875(c) no matter the response from the alleged intended target, no matter if there was any response at all, and no matter if that individual even knew of the threat. Therefore, any actual reaction to the alleged threat, either by the U.S. Naval Academy itself or any individual student there, is completely irrelevant to the four elements of this charge.

b.  <u>Inadmissible under 403</u>

Admission of the attenuated responses of the U.S. Naval Academy, the midshipmen, and the events that unfolded is also inadmissible under Fed. R. Evid. 403. Under this rule, "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury." Fed. R. Evid. 403. The probative value of the evidence of the events that unfolded at the Naval Academy campus is substantially outweighed by the danger of unfair prejudice, confusing the issues, and misleading the jury.

First, the admission of this evidence would be completely outweighed by the danger of unfair prejudice. "Unfair prejudice ... means an undue tendency to suggest a

4

decision on an improper basis, commonly, though not necessarily, an emotional one."
Advisory Committee's Notes on Fed. R. Evid. 403. The government has tendered the
defense a voluminous amount of discovery regarding the response of the Naval Academy,
the response of individual midshipmen at the Academy, including but not limited to
reports, radio dispatches, emails, and 911 calls, media coverage, and Facebook posts.
The government has also indicated to defense counsel they seek to have a number of
witnesses from the U.S. Naval Academy testify at trial, including a U.S. Naval Academy
officer, Drew Stark, the midshipman who was shot by officers, and at least two other
midshipmen. If the jury hears of the Naval Academy Campus lock-down, the shooting
that occurred, including but not limited to the likely emotional testimony from the
midshipman who was injured, and his classmates who experienced the lockdowns, they
will likely be emotionally swayed by the events which took place after this alleged threat.
Based on the emotional evidence presented, the jury could find Mr. Fleming guilty based
on conduct he was not involved in, is not charged with, and does not relate at all to the
elements of the offense. When weighed against the lack of probative value that this
information has, the risk of unfair prejudice to Mr. Fleming is too great for this evidence
to be admissible at trial. Additionally, the evidence of this response that the government
seeks to present at evidence outweighs by sheer time taken to present, to the evidence of
the elements themselves. This would create a completely prejudicial overload, where the
jury's attention is mainly focused on the response of the Naval Academy in the aftermath
of these charges, not on the actual charges and elements themselves. This can be likened
to trials where a wealth of 404(b) evidence or previous convictions are admitted into

evidence. Courts have found this type of evidence can create a prejudicial overload and must be limited at trial. The Seventh Circuit has stated, "The jury's day-long exposure to voluminous evidence of [defendant's] prior bad acts, many of which were appalling, created a significant risk of prejudice. There is a real danger that such evidence, dumped without constraint into the record, can lead a jury to convict a defendant not on the basis of proof of the crime with which he has been charged, but for his simply being a bad person or for having committed unseemly acts in the past." *United States v. Ciesiolka,* 614 F.3d 347, 358 (7th Cir. 2010). This same reasoning applies to the evidence of the shooting and the Naval Academy's response. If the government is able to present witness after witness who only testify to the response to the alleged threat, this will create a complete prejudicial overload, and the jury could convict Mr. Fleming because of the response to the alleged threats, without actually analyzing the elements of the charges themselves.

Additionally, this evidence is inadmissible under 403 as it would confuse the issues and mislead the jury. Mr. Fleming is not on trial for the shooting that occurred at the Naval Academy. Mr. Fleming is not charged with any incident or action that occurred at the U.S. Naval Academy on September 11, 2025. He was not at the Naval Academy on that date. Any actions Mr. Fleming allegedly took are completely attenuated from the response of the U.S. Naval Academy and its students. Allowing evidence of the U.S. Naval Academy's response would confuse the issues and mislead the jury. The jury could easily focus on the reaction of the U.S. Naval Academy and its students, and find Mr. Fleming guilty because of this response, not based on the elements the government has

6

to prove. The presentation of this evidence would constitute a mini-trial within this trial, and completely distract the jury from the case itself. This evidence would take up a significant portion of the trial itself, drawing the jury's attention to focus on these irrelevant events which occurred after the allegations, which have no bearing on Mr. Fleming's guilt or innocence.

2. <u>Exclude evidence of Fleming's separation from the Naval Academy</u>

Mr. Fleming was previously enrolled in the U.S. Naval Academy, but separated from the Academy in December of 2023. He finished his college education at Purdue, graduating in May of 2025. Mr. Fleming moves to bar all evidence of his separation from the U.S. Naval Academy from evidence at trial. It is completely irrelevant under 401 and substantially more prejudicial than probative under 403.

First, the fact that Mr. Fleming separated from the U.S. Naval Academy is completely irrelevant to the charges in this case. The alleged threats have nothing to do with his separation from the Academy. There are no allegations that any alleged threat was connected to his separation from the Academy or that the alleged threats are in reaction to his separation from the Academy. There is no evidence tying these two events together, and therefore this is completely irrelevant and should be barred from evidence.

Second, evidence of Mr. Fleming's separation is substantially more prejudicial than probative. If the jury hears he separated from the Academy, they could infer that Mr. Fleming left the Academy due to events or issues that happened there. The jury could make inferences against Mr. Fleming, and therefore be prejudiced against Mr. Fleming while having no basis for those prejudices. This evidence should be excluded under 403.

3. <u>Exclude any and all photographs and chats not in the Jodel chat</u>

7

In the course of investigating this incident, officers obtained a search warrant for Mr. Fleming's home and person. Pursuant to the search warrant, they seized a cell phone allegedly belonging to Mr. Fleming. Pursuant to the investigation, officers also obtained search warrants for accounts allegedly associated with Mr. Fleming. Mr. Fleming moves to exclude any evidence from this cell phone or other online accounts that are (1) from any other phone application outside of Jodel, including but not limited to text messages, emails, or posts on any other social media platform, and (2) any other Jodel messages or posts from before or after September 11, 2025. Any messages, photos, or applications on this device outside of Jodel and outside the time period of the charge are completely irrelevant to the charge in this case, and are substantially more prejudicial than probative.

First, any additional posts or messages are completely irrelevant under Fed. R. Evid. 401. Messages between Mr. Fleming and other or posts allegedly made by him found on the device have no bearing on the elements that government must prove. Idle chatter between individuals with no relation to the case should not be admitted at trial as it has no relevance to the charges. Nothing outside the Jodel application has any relevance to the charges either. The government has not put forth any specific messages or posts found on the device that they seek to enter into evidence, and there is no reason any of these messages or posts would be relevant.

Additionally, these messages and posts would be more prejudicial than probative. Many of these messages and posts include derogatory language towards women or minorities. These messages, beyond their irrelevance, would be completely more

8

prejudicial than probative under Fed. R. Evid. 403. If the jury sees or reads these messages they could believe Mr. Fleming is a bad person deserving of punishment, and view the evidence through this biased lens instead of actually analyzing the evidence presented in the case. This can be likened to cases where courts have excluded evidence of criminal activity or drug activity found on an individual's phone, as that could bias the jury against the defendant. *United States v. Matta-Quinones,* 633 F. Supp. 3d 577, 582 (D.P.R. 2022) ("The introduction of the photo of the marijuana poses an outweighing danger that the jury will draw improper inferences of criminal propensity."). Any messages on the device recovered outside of Jodel on September 11, 2025, are inadmissible under both Fed. R. Evid. 401 and 403.

4. <u>Exclude witnesses from testifying to or making assumptions while testifying</u>

Federal Rule of Evidence 602 states, "[a] witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Under this rule, speculative testimony outside of a witness's personal knowledge is barred from admission. Courts have stated "[l]ay testimony not based on personal knowledge is useless." *United States v. Allen*, 10 F.3d 405, 414 (7th Cir. 1993). Rule 602 bars testimony about assumptions or what someone may have heard.

Similarly, Federal Rule of Evidence 701 governs the admission of opinion testimony by lay witnesses. Lay witnesses are any witnesses not testifying as an expert. This rule states that "a court may admit opinion evidence by a lay witness where the witness' opinion is "(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." *United*

*States v. Towns*, 913 F.2d 434, 445 (7th Cir. 1990). Based on Federal Rules of Evidence 602, and 701, the defense moves to bar any testimony from witnesses that call for any assumptions or speculation. A witness may only testify to what is in their personal knowledge, and any assumptions about Mr. Fleming's state of mind or thoughts is completely outside the scope of allowable testimony.

5. <u>Motion to sequester witnesses</u>

Mr. Fleming requests the Court order the sequestration of witnesses under Federal Rule 615. The trial court's power to control the progress of a criminal trial includes "broad power to sequester witnesses before, during, and after their testimony." Geders v. United States, 425 U.S. 80, 87 (1976). The practice of sequestration of witnesses has existed for centuries. *Id.*

In *Geders*, the United States Supreme Court outlined three reasons for sequestration. First, "[i]t exercises a restraint on witnesses 'tailoring' their testimony to that of earlier witnesses." *Id.* Second, "it aids in detecting testimony that is less than candid." *Id.* Third, it prevents "improper attempts to influence the testimony in light of the testimony already given." *Id.*; *see also Perry v. Leeke*, 488 U.S. 272, 281–82 (1989) ("[W]itnesses may be sequestered to lessen the danger that their testimony will be influenced by hearing what other witnesses have to say, and to increase the likelihood that they will confine themselves to truthful statements based on their own recollections."); *Mojsilovic v. I.N.S.*, 156 F.3d 743, 749 (7th Cir. 1998) ("[T]he whole purpose of sequestration is to ensure that a witness is untainted by the testimony of

10

others."). Here, Mr. Fleming requests the sequestration of witnesses to discourage and expose any fabrication, inaccuracy, or collusion.

**WHEREFORE**, Mr. Fleming respectfully requests the Court preclude the government from introducing the above evidence at trial. Additionally, Mr. Fleming respectfully requests leave of the Court to file any additional motions *in limine* based on any future discovery production the government may tender after the filing date of this motion, or based on other motions, filings, or arguments the government may present.

Respectfully submitted,

s/ Jonathan S. Bedi
Jonathan S. Bedi
Bedi & Singer, LLP
53 West Jackson Blvd
Chicago, IL 60604
Phone: (312) 525-2017
jbedi@bedisinger.com
**Attorney for Defendant**

11

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the foregoing document was filed via the Court's ECF system.

By: s/ Jonathan S. Bedi
Jonathan S. Bedi
Bedi & Singer, LLP
53 West Jackson Blvd, Suite 1101
Chicago, IL 60604
Phone: (312) 525-2017
jbedi@bedisinger.com
**Attorney for Defendant**

12